UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-cv-24279-KMW

PET PARADE, INC., on behalf of itself and
all others similarly situated,

    Plaintiff,

vs.

STOKES HEALTHCARE, INC., a foreign
company, doing business as EPICUR PHARMA,

    Defendant.
_____/

## PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD

    Plaintiff Pet Parade, Inc. initiated this action against Defendant, Stokes Healthcare, Inc., doing business as Epicur Pharma ("Defendant" or "Epicur") to redress violations of the Junk Fax Prevention Act ("JFPA") provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[1] Plaintiff sought to enforce these laws, seeking damages and injunctive relief, resulting from the alleged unlawful actions of Epicur in sending unsolicited facsimile advertisements. Plaintiff and Class Counsel's diligent work achieved both litigation goals.

    Through this litigation, the parties negotiated a Settlement on behalf of Plaintiff and a class of approximately 11,205 individuals and entities who, according to Defendant's records, were sent a telephone facsimile advertisement from or on behalf of Defendant ("Settlement Class"). On October 18, 2021, the Court granted Preliminary Approval to the Settlement, directed that notice be provided to the Settlement Class, and established a deadline for the filing of Plaintiff's Application for Attorneys' Fees, Costs, and a potential Service Award [DE 66]. Pursuant to the Settlement Agreement and Order Granting Preliminary Approval, Plaintiff and Class Counsel

---

1.    Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement [DE 61-1].

1

hereby submit their Application for Attorneys' Fees, Costs, and Service Award, in advance of the Claim Submission and Objection deadline.

Class Counsel respectfully request an award of Attorneys' Fees of $495,000, which is equal to thirty percent (30%) of the Settlement Fund, plus expenses in the amount of $6,696.58. Plaintiff requests that the Court retain jurisdiction and defer resolution of the Service Award request until a final decision is reached in *Johnson v. NPAS Sol'ns., LLC*, 975 F.3d 1244, (11th Cir. 2020).

Class Counsel negotiated an exceptional Settlement after contested litigation, formal and informal discovery, and extensive negotiations, including two formal mediation sessions after the first mediation resulted in impasse. Class Counsel undertook their efforts on a purely contingent basis and have yet to be compensated for their success in achieving comprehensive relief for the Settlement Class. Considering the significant risks faced by Class Counsel, the value of the Settlement, and the positive response from the Settlement Class, the requested Attorneys' Fees and Costs are fair and reasonable.

## I.   INTRODUCTION

Defendant, through its vendor and fax broadcaster, sent unsolicited fax advertisements to 11,205 recipients that are identified on Defendant's Master Fax List. While Defendant contends that many of the recipients invited or otherwise solicited the fax advertisements, Plaintiff contends that all of the fax advertisements violate the JPFA regardless, because they did not contain a required opt-out notice.

The Settlement reached provides cash compensation to all Settlement Class Members who submit a timely and valid Claim Form.  The Settlement was negotiated over the course of more than two-months, including two full day mediations conducted by mediator Jeffrey Grubman of JAMS, as well as several post-mediation negotiations with and without the assistance of Mr. Grubman.

Plaintiff and Class Counsel believe that the claims asserted in the Action have merit. However, taking into account the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation and any subsequent appeal, Plaintiff and Class Counsel believe that it is desirable that the Action be fully and finally settled pursuant to the terms and conditions set forth in the Agreement. Plaintiff and Class Counsel have concluded that it is in the best interests of the class to settle the Action.

The Agreement provides for a Settlement Fund in the amount of $1,650,000.00, from which Defendant is required to pay a cash benefit of up to $500.00 to Settlement Class Members who submit a valid Claim Form, and an award of Attorneys' Fees and Costs and a potential Service Award to the named Plaintiff, as well as injunctive relief.  Litigating this case to a successful resolution required substantial commitments of time and resources from Class Counsel.

## II.     SUMMARY OF THE SETTLEMENT

The Settlement terms are detailed in the Agreement. *See* Settlement Agreement [DE 61-1]. The following is a summary of its material terms.

### A.     The Settlement Class

The Settlement Class is defined as:

> All persons identified on Epicur's Master Fax List  who (1) during the four-year period prior to the filing of this action through the date of preliminary approval, (2) were sent a telephone facsimile message advertising the commercial availability or quality of any property, goods, or services by or on behalf of Epicur, (3) that did not display an opt-out notice on the first page stating that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, would be unlawful.

Agreement at I.GG.

### B.     Monetary Relief

The Settlement requires Defendant to make available up to $1,650,000.00 cash for the benefit of the Settlement Class.  In order to receive a portion of the Settlement Fund, Settlement Class Members are required to complete a Claim Form. Direct Mail Notice was mailed by U.S. Mail (and by fax if mailing address was unavailable) to each Settlement Class Member. Claim Forms are available at, or can submitted on, the Settlement Website. Each Settlement Class Member who timely submits a valid Claim Form shall receive a Claim Settlement Payment in the amount of $500.00, subject to a pro rata distribution. The Claim Submission deadline is not until January 13, 2022.

### C.     Injunctive Relief

The Settlement requires Defendant to alter its business practices. To the extent that Epicur continues to send telephone facsimile advertisements to customers, Epicur will ensure that its policies and procedures comply with the TCPA, including, but not limited to, ensuring that it obtains and maintains adequate consent from individuals and businesses that it has an existing business

relationship with, and will ensure than any such facsimile advertisements contain all required opt-out notice language, before sending facsimile advertisements to those individuals. Agreement, II.B.2.

     **D.**    **Class Release**

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendant from claims related to the subject matter of the Action. The detailed release language is found in Section V of the Agreement.

     **E.**    **Settlement Notice**

The Notice Program was designed to provide the best notice practicable and was tailored to use the information Defendant had available about Settlement Class Members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsels' Attorneys' Fee application and request for Service Award for Plaintiff, and their rights to opt-out of the Settlement Class or object to the Settlement. *See* Joint Declaration of Class Counsel ("Class Counsel Decl."), attached as **Exhibit A**, at ¶ 2. The Notices and Notice Program constituted sufficient notice to all persons entitled to notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

     **F.**    **Attorneys' Fees and Costs**

Class Counsel are entitled to petition for Attorneys' Fees of up to thirty percent (30%) of the Settlement Fund, plus expenses not to exceed Fifteen Thousand Dollars ($15,000.00), to be paid by Defendant from the Settlement Fund. Agreement, II.D.1. The Parties did not negotiate or reach an agreement regarding fees and costs until after agreeing on all other material terms of the Settlement. Class Counsel Decl. ¶ 3.

     **G.**    **Service Award**

Class Counsel are entitled to petition for a potential Service Award of $5,000 for the Class Representative. Agreement at II.D.2. If the Court approves it, the Service Award will be paid from the Settlement Fund. *Id.* The Service Award will compensate the Class Representative for its time and effort in the Action, and for the risks it undertook in prosecuting the Action against Defendant.

**III.**    **APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

Pursuant to the Agreement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of Attorneys' Fees of

4

$495,000, representing thirty percent (30%) of the Settlement Fund, plus expenses in the amount of $6,696.58. Class Counsel and Defendant negotiated and reached agreement regarding Attorneys' Fees and Costs only after reaching agreement on all other material settlement terms. The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Class Counsel submit that the requested fee is appropriate, fair and reasonable, and respectfully requests that it be approved by the Court.

### A. The Law Awards Class Counsel Fees from the Settlement Fund Created Through Their Efforts.

Rule 23 establishes that a court may award "reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Here, as part of the Settlement, Class Counsel are entitled to petition for Attorneys' Fees of up to 30% of the Settlement Fund, plus expenses not to exceed $15,000.00, to be paid by Defendant from the Settlement Fund. Agreement, II.D.1.

It is well established that when a representative party has conferred a benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Checking Overdraft Litig.*, 830 F. Supp. 2d at 1358.

"Both the United States Supreme Court and the Eleventh Circuit have expressly approved calculating fees by applying the percentage-of-recovery method to the total value of the settlement." *Williams, et al. v. Reckitt Benckiser, LLC, et al.*, No. 1:20-cv-23564-MGC, at * 90 (S.D. Fla. Dec. 15, 2021) (report and recommendations approving 36% of the value of the monetary relief made available to the Settlement Class) (citing *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980)). Here, Class Counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained. *Id*.

The common benefit doctrine is an exception to the general rule that each party must bear its own litigation costs. The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (internal citations omitted). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant.

5

*Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and courts in this District have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *Sunbeam*, 176 F. Supp. 2d at 1333. Courts recognize that appropriate fee awards in cases such as this encourage redress for wrongs caused to entire classes of persons and deter future misconduct of a similar nature.

In *Camden I* – the controlling authority regarding attorneys' fees in class actions – the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees . . . shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Hamilton v. SunTrust Mortg. Inc.*, No. 13-60749-CIV-COHN/SELTZER, 2014 U.S. Dist. LEXIS 154762, at *20 (S.D. Fla. Oct. 24, 2014) (Attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (noting that in a claims made situation, the attorneys' fees in a class action are determined based upon the total fund, not just the actual payout to the class); *Carter v. Forjas*, 701 F. App'x 759, 766-67 (11th Cir. 2017) (same).

"In the Eleventh Circuit . . . [a]ttorney's representing a class action are entitled to an attorney's fee based upon the total benefits obtained in or provided by a class settlement, regardless of the amounts eventually collected by the Class. *Hall v. Bank of America,* 2014 U.S. Dist. LEXIS 177155, at *24 S.D. Fla. Dec. 17, 2014) (*citing Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Id*. at *22 ("A settlement's fairness is judged by the opportunity created for the class members, not by how many submit claims."); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1295-96 (11th Cir. 1999) ("The attorney's fees in a class action can be determined based upon the total fund, not just the actual payout to the class."); *David v. Am. Suzuki Motor Corp.*, 2010 U.S. Dist. LEXIS 146073 (S.D. Fla. Apr. 15, 2010) (settlement with ascertainable benefits may be treated as a common fund to which a percentage fee may be awarded).

The "common benefit" theory permits a court to award attorney's fees even if there no common fund. *See In re Lifelock,Inc., Mkrg. & Sales Practices Litig.*, 2010 WL 3715138, at *8 (D. Ariz. Aug. 31, 2010). "Fees are based on a percentage of the total benefits made *available* . . . ." *Williams, et al.*, No. 1:20-cv-23564-MGC, at * 90 (citing *Waters v. Int'l Precious Metals Corp.*, 190

F.3d 1291, 1295-96 (11th Cir. 1999) (affirming fee award of 33-1/3% of total amount made available to class, and determining that attorney's fees may be determined based on total fund, not just actual payout to class)). As explained in *Wilson v. Everbank,* [t]his is so because "[a] settlement's fairness is judged by the *opportunity* created for the class members . . . ." 2016 WL 457011, at *10 (S.D. Fla. Feb. 3, 2016),

The Court has discretion in determining the appropriate fee percentage. "There is no hard and fast rule mandating a certain percentage . . . because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774).

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions:

> (1) the time and labor required;
> (2) the novelty and difficulty of the relevant questions;
> (3) the skill required to properly carry out the legal services;
> (4) the preclusion of other employment by the attorney as a result of his acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the clients or the circumstances;
> (8) the results obtained, including the amount recovered for the Clients;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and the length of the professional relationship with the clients; and
> (12) fee awards in similar cases.

*Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

These 12 factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. As applied, the *Camden I* factors support the requested fee.

7

### 1.     *The Claims Against Defendant Required Substantial Time and Labor.*

Prosecuting and settling these claims demanded considerable time and labor, making this fee request reasonable. Class Counsel Decl.¶ 15. Class Counsel devoted substantial time to investigating the claims against Defendant. *Id*. ¶ 16. Class Counsel also expended resources researching and developing the legal claims at issue. *Id*. ¶ 17. Time and resources were dedicated to the litigation, including contested conditional class certification, and formal and informal discovery. *Id*. ¶ 18. Plaintiff directed significant discovery to Defendant including three sets of document requests, interrogatories, and two sets of requests for admission, in addition to serving non-party subpoenas. *Id*. Class Counsel spent considerable time conducting discovery and reviewing the production received for litigation and settlement purposes. *Id*.

Settlement negotiations consumed further time and resources. Class Counsel Decl.¶ 19. The mediation and post-mediation sessions required substantial preparation and time commitment. *Id*. Finally, significant time was devoted to negotiating and drafting of the Agreement and the preliminary approval process, and to all actions required thereafter pursuant to the preliminary approval order, including oversight of the Notice Program to ensure proper implementation. *Id*. All of this work consumed a substantial amount of time. All told, Class Counsel's coordinated work paid dividends for the Settlement Class. Each of the above-described efforts was essential to achieving the Settlement before the Court. Class Counsel Decl.¶ 20. The time and resources devoted to this Action readily justify the requested fee. Moreover, Class Counsel's work is not yet done. Class Counsel is prepared to devote all the necessary time and resources to ensure final approval of settlement, including handling any objections and appeals, to ensure that the Settlement Class obtains the benefits of the settlement. *Id*. ¶ 21.

### 2.     *The Issues Involved Were Novel and Difficult and Required the Skill of Highly Talented Attorneys.*

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). The quality of Class Counsel's legal work conferred a substantial benefit on the Settlement Class in the face of significant litigation obstacles. Class Counsel's work required the acquisition and analysis of a significant amount of factual and legal information.

In any given case, the skill of legal counsel should be commensurate with the novelty and complexity of the issues, as well as the skill of the opposing counsel. Litigation of this Action required counsel trained in class action law and procedure as well as the specialized issues

presented here, such as analyzing class certification issues and litigating issues such as whether the facsimiles at issue were "unsolicited" as defined by the JFPA and whether a compliant opt-out notice is required for facsimile's deemed solicited.

Specifically, Defendant contends that it did not transmit any *unsolicited* facsimile advertisements. *See* Joint Declaration in Support of Preliminary Approval [DE 46-2, ¶¶ 15-16]. Defendant contends that Plaintiff and certain Class Members attended various veterinary conferences where Plaintiff and Class Members provided contact information to Defendant, thereby inviting contact by Defendant, thus rendering the faxes *solicited* and not subject to the TCPA. *Id*. Defendant also contends that the JFPA of the TCPA only applies to faxes which are solely received on a traditional fax machine (as opposed to a digital fax machine), thereby rendering the Class unascertainable and defeating class certification. *Id*. Defendant further maintains that many individualized inquiries predominate over the claims and that almost 90% of the recipients identified on its Master Fax List are existing customers. *Id.* Defendant asserts that because faxes were sent to both its customers and potential customers that allegedly provided it with contact information, that all of the faxes were "solicited," and that 11th Circuit case law supports an argument that a "solicited" fax does not require an opt-out notice. *See Gorss Motels, Inc. v. Safemark Systems, Inc.* 931 F.3d 1094 (11th Cir. 2019). *Id*. Last, Defendant asserts that even if a fax is deemed unsolicited (within the ambit of the TCPA), it is an open legal question whether the opt-out notice at issue is valid and that fact, combined with an established business relationship as well as the Plaintiff's publication of its fax number renders Epicur to have no liability to Plaintiff or the Settlement Class under the TCPA.

Class Counsel was able to leverage their collective experience, and their participation added value to the representation of this Settlement Class. Class Counsel Decl. ¶ 22. The Action involved complex and novel challenges, which Class Counsel met at every juncture. *Id*. Indeed, the outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Class Counsel regularly engage in complex litigation involving consumer issues, and all have been Class Counsel in numerous consumer class action cases. *See* Joint Declaration and Resumes in Support of Preliminary Approval [DE 46-2].

In evaluating the quality of representation by Class Counsel, the Court should also consider opposing counsel. *See Camden I*, 946 F.2d at 772 n.3; *Ressler*, 149 F.R.D. at 654; *See In re*

9

*Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1334 ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced."). Throughout the litigation, Defendant was represented by extremely capable and experienced counsel. They were worthy, highly competent adversaries, at all stages. Class Counsel Decl. ¶ 23; *Walco Invs. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (stating that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser aptitude could have achieved similar results").

### 3. *Class Counsel Achieved a Significant and Successful Result.*

Given the significant litigation risks Plaintiff and Class Counsel faced, the Settlement represents an exceptional result. Rather than facing years of costly and uncertain litigation, each Settlement Class Member is entitled to claim a cash benefit of $500.00. Class Counsel Decl. ¶ 24. Given the ranges of typical individual recovery to settlement class members in other TCPA cases, the Settlement benefit to Class Members here is significant.[2] This factor weighs heavily in favor of approving the fee and cost amount.

---

2. The majority of the approved TCPA class action settlements that provide cash or merchandise to class members is typically less than $100. *See e.g. Spillman v. RPM Pizza, LLC*, Case No. 3:10-cv-00349 (M.D. Louisiana)(DE 244, 245)($15 recovery per claimant); *Desai v. ADT Security Systems*, Case No. 1:11-cv-01925 (N.D. Illinois)(DE 240, 243) ($47 recovery per claimant); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (N.D. Illinois)(DE 74) ($28.13 recovery per claimant); *Paldo Sign and Display Company v. Topsail Sportswear*, Case No. 1:08-cv-05959 (N.D. Illinois)(DE 116) ($42 recovery per fax); *Adams v. AllianceOne Receivables Management, Inc.*, 3:08-cv-00248 (S.D. California) ($40 recovery per claimant)(DE 116, 137; *Agne v. Papa John's International, et al.*, 2:10-cv-01139 (W.D. Washington)(DE 389) ($50 recovery plus $13 merchandise per claimant); *Bellows v. NCO Financial Systems, Inc.*, 3:07-cv-01413 (S.D. California)(DE 38 at 6) ($70 recovery per claimant); *Clark v. Payless ShoeSource, Inc.*, 2:09-cv-00915 (W.D. Wash.)(DE 61 at 3; 72) ($10 merchandise certificate per claimant); *Cubbage v. The Talbots, Inc. et al.*, 2:09-cv-00911 (W.D. Wash.)(DE 114, ¶ 11) ($40 or $80 merchandise certificate per claimant); *Hovila v. Tween Brands, Inc.*, 2:09-cv-00491 (W.D. Wash.)(DE 12, ¶ 12) ($20 or $45 merchandise certificate); *In re Jiffy Lube International, Inc. Text Spam Litig.*, 3:11-MD-02261 (S.D. Cal.)(DEs 90-1 at 7-8; 97) ($15); *Kazemi v. Payless ShoeSource, Inc. et al.*, 3:09-cv-05142 (N.D. Cal.)(DE 94, ¶ 10) ($15 merchandise certificate); *Kwan v. Clearwire Corp.*, 2:09-cv-01392 (W.D. Wash.)(DEs 201) ($53 per call); *Lemieux v. Global Credit & Collection Corp.*, 3:08-cv-01012 (S.D. Cal.)(DE 46, at 4) ($70 recovery per claimant); *Malta v. Freddie Mac & Wells Fargo Home Mortgage*, 3:10-cv-01290 (S.D. Cal.)(DE 91 at 5) ($85 recovery per claimant); *Sarabi v. Weltman, Weinberg & Reis Co.*, 3:10-cv-01777 (S.D. Cal.)(DE 42 at 6) (48 recovery per claimant); *Steinfeld, et al. v. Discover Financial Services, et al.*, 3:12-cv-01118 (N.D. Cal.)(DE 65 at 17) ($47 recovery per claimant); and *Wojcik v. Buffalo Bills, Inc.*, 8:12-cv-02414 (M.D. Fla.)(DE 77 at 5) ($58-$75 recovery per claimant).

### 4.     *The Claims Presented Serious Risk.*

The Settlement is particularly noteworthy given the combined litigation risks. Class Counsel Decl. ¶ 25. As discussed, *supra*, Defendant raised substantial and meritorious defenses, both to class certification and to the merits of Plaintiff's claims. Based on the facts, Plaintiff faced a rising tide of case law suggesting that certification of the Settlement Class was in question. Defendant asserts that because faxes were sent to both its customers and potential customers that allegedly provided it with contact information, that all the faxes were "solicited," and that a "solicited" fax does not require an opt-out notice. Last, Defendant asserts that even if a fax is deemed unsolicited (within the ambit of the TCPA), it is an open legal question whether the opt-out notice at issue is valid and that fact, combined with an established business relationship as well as the Plaintiff's publication of its fax number renders Defendant to have no liability to Plaintiff or the Settlement Class.

The "litigation risks" factor under *Camden I* also requires consideration that Class Counsel took on the case while knowing that it may have yielded no recovery at all. *Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

Prosecuting the Action was risky from the outset. Class Counsel Decl. ¶ 26. Defendant was confident in its opposition to Plaintiff's claims. The Settlement obtained is substantial given the complexity of the litigation and the significant risks and barriers that loomed in the absence of settlement. Any of these risks could easily have impeded, if not altogether derailed, Plaintiff's and the Settlement Class' successful prosecution of these claims. The Settlement Fund is also significant given Defendant's limited financial resources. *See* Joint Declaration and Resumes in Support of Preliminary Approval [DE 46-2, ¶¶17-19].

The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if: (i) Plaintiff was able to establish and maintain class certification through trial and appeal; (ii) Plaintiff was able to establish liability and damages at trial; and (ii) the final judgment was affirmed on appeal. The Settlement is an extremely fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path

of litigation Plaintiff and the class would have faced absent the Settlement. Class Counsel Decl. ¶ 27.

### 5. *Class Counsel Assumed Considerable Risk to Pursue This Action on a Pure Contingency Basis.*

The ability to recover costs and fees in this case has always been contingent on a successful outcome and substantial recovery. The TCPA does not provide for an award of attorney fees to a prevailing plaintiff. The only way to recover a fee is to be part of a recovery. In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. Class Counsel Decl. ¶ 28. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*, 118 F.R.D. at 548).

Public policy concerns – in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims – support the requested fee. *Id*. ¶ 29. There is inherent risk faced by Class Counsel in accepting and prosecuting the Action on a contingency fee basis. Class Counsel remain completely uncompensated for the time invested in the Action thus far, in addition to the expenses we advanced. *Id*. ¶ 30.

This is important because "[a] determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the wholly contingent outlay of out-of-pocket sums by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp.2d 1334 at 1339 (S.D. Fla. 2007). Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *In re Checking Acc't Overdraft Litig.*, 830 F. Supp.2d at 1364, *quoting In re Sunbeam Sec. Litig.*, 176 F. Supp.2d at 1335. Accordingly, some courts have observed that "[a]ttorneys' risk is perhaps the foremost factor in determining an appropriate fee award." *Francisco v. Numismatic Guar. Corp.*, No. 06-61677, 2007 U.S. Dist. LEXIS 96618 at *35 (S.D. Fla. Jan. 30, 2007), *citing Pinto,* 513 F. Supp.2d at 1339. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel.

### 6. *The Requested Fee Comports with Fees Awarded in Similar Cases.*

Here, Counsel's requested fee of 30% of the Settlement Fund is well within the range of fees typically awarded in similar cases and in the Eleventh Circuit. Class Counsel Decl. ¶ 31.

Numerous decisions within and outside of the Southern District of Florida and the Eleventh Circuit have found that a 33.33% fee, or more, is well within the range of reason under the factors listed by the *Camden I*. *See Williams, et al.*, No. 1:20-cv-23564-MGC, at * 94 (awarding 36% of the monetary relief made available "which is well within the range approved by the Eleventh Circuit); *See also Cabot E. Broward 2 LLC v. Cabot,* No. 16-61218-CIV, 2018 WL 5905415, at *7–8 (S.D. Fla. Nov. 9, 2018) (collecting cases) (internal quotation marks, citation, and emphasis omitted) ("According to recent empirical studies . . . the average percentage fee award in this Circuit is now at or above 30%, as courts within this Circuit have routinely awarded attorneys' fees of 33 percent or more of the gross settlement fund."); *See Legg v. Laboratory Corp. of America*, 14-cv-61543-RLR, Dkt. 227, p.7 (S.D. Fla. Feb. 18, 2016) (FACTA case awarding one-third of gross recovery for attorneys' fees, plus expenses); *Gevaerts v. TD Bank, N.A.*, No. 11:14-cv-20744-RLR, 2015 U.S. Dist. LEXIS 150354, at *27 (S.D. Fla. Nov. 5, 2015) (finding that a request for 30% of a $20 million dollar fund is justified); *Wolff v. Cash 4 Titles*, No. 03-22778- CIV, 2012 WL 5290155, at *5-6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (citing Circuit case law and listing Southern and Middle District of Florida attorneys' fees awards); *See also Smith v. KFORCE Inc.*, 2020 WL 7250603, at *2 (M.D. Fla. Dec. 9, 2020) ("[A]ttorneys' fees and costs in the amount of one third (33.33%) of the common fund, . . . is within the reasonable range.")

Class Counsel's fee request also falls within the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig.*, Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring).

Finally, Class Counsel's fee request also falls within the range of awards in TCPA cases within this District. *See Marengo v. Miami Research Assoc., LLC.*, No. 1:17-cv-20459-KMW (S.D. Fla. July 23, 2018) (awarding the requested attorneys' fees and costs of 31.55% as "reasonable under the percentage-of-the-fund" method, stating ""many similar TCPA class settlements provide for one third of the fund . . . 'consistent with the trend in this Circuit'") (internal

13

citations omitted); *See Gottlieb v. Citgo Petroleum Corp.*, No. 9:16-cv-81911, 2017 U.S. Dist. LEXIS 197382, at *7 (S.D. Fla. Nov. 29, 2017) (granting fees and costs amounting to one-third of the $8,000,000.00 settlement fund); *ABC Bartending School of Miami, Inc., v. American Chemicals & Equipment, Inc.*, No. 15-CV-23142-KMV (S.D. Fla. April 11, 2017) (granting fees and costs amounting to one-third of the $1,550,000.00 settlement fund); *Guarisma v. ADCAHB Med. Coverages, Inc.*, Case No. 1:13-cv-21016 (S.D. Fla. June 24, 2015) (granting fees and costs amounting to one-third of the $4,500,000.00 settlement fund); *Medgebow v. Checkers Drive-In Restaurants, Inc.*, 9:19-cv-80090-BB (S.D. Fla. Sept. 18, 2019 ("The Court finds that the requested fees of 30% of the Settlement Fund are reasonable under the percentage-of-the-fund and benefit approach").

Moreover, [t]his percentage calculation does not take into account the value of the injunctive relief, which is surely worth *some* amount." *See Williams, et al.*, No. 1:20-cv-23564-MGC, at * 94. [W]hen analyzing the value of non-monetary benefits, courts should consider changes to a defendant's business practices. *Id.* (citing *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243-44 (11th Cir. 2011)).

Consequently, the attorneys' fee requested here, is appropriate and should be awarded.

### 7. *The Expense Request Is Appropriate.*

In addition to fees, the Federal Rules of Civil Procedure allow the court to "award reasonable . . . nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).

Here, Class Counsel request reimbursement for a total of $6,696.58 in litigation costs. Class Counsel Decl. ¶ 32. This sum corresponds to certain actual out-of-pocket costs that Class Counsel necessarily incurred and paid in connection with the prosecution of the Action and the Settlement. *Id*. These costs consist of mediator's fees and expenses, and general litigation costs, including court filing fees, service of process, subpoenas and other costs. *Id.* These out-of-pocket expenses were reasonably and necessarily incurred and paid in furtherance of the prosecution of this Action. *Id.*

Class Counsel also incurred in excess of $2,500 of research costs attributable to this Action, but Class Counsel is not seeking reimbursement of these costs.

## IV. APPLICATION FOR SERVICE AWARD

As discussed *infra* and as other courts have done (and as contemplated by the Settlement

14

Agreement), Plaintiff requests that the Court defer resolution of the Service Award request until a final decision is reached in *Johnson v. NPAS Sol'ns., LLC*.

Historically, "there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful class action." *David v. American Suzuki Motor Corp.*, 2010 WL 1628362, at *6 (S.D. Fla. Apr. 15, 2010). Such service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). Similarly, "[c]ourts have consistently found service awards to be an efficient and productive way to encourage members of a class to become class representatives." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1357 (S.D. Fla. 2011). "The factors for determining a service award include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation." *Id.* (citing *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir.1998)).

Pursuant to the Settlement, Class Counsel respectfully request that the Court retain jurisdiction to entertain a Service Award for the Class Representative in the amount of $5,000. Analysis of the factors supports approval of the requested Service Award of $5,000, in accordance with the Settlement Agreement, to compensate the Class Representative for the time and effort spent representing the best interests of the Settlement Class. *See Marengo*, No. 1:17-cv-20459-KWW (approving a $7,500 service award); *See, e.g.*, *Stallworth v. Monsanto Co.*, No. PCA 73-45. 198) U.S. Dist. LEXIS 12858, at *20-21 (N.D. Fla. June 26, 1980) (approving service awards ranging from $10,000 to $20,000 to four named plaintiffs); *See In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011) (collecting cases and approving incentive awards of $5,000 per class representative); *David v. Am. Suzuki Motor Corp.*, No. 08-cv-22278, 2010 WL 628362, *6 (S.D. Fla. Apr. 15, 2010) (approving an incentive award of $5,000 for a class representative, in addition to a new motorcycle); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (awarding class representatives $300,000 each, explaining that "the magnitude of the relief the Class Representatives obtained on behalf of the class warrants a substantial incentive award."); *Spicer v. Chicago Bd. Options Exchange, Inc.*, 844 F. Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving service awards ranging from $5,000 to $100,000, and awarding $10,000 to each named plaintiff).

Plaintiff provided assistance that enabled Class Counsel to successfully prosecute the Action including submitting to interviews with Class Counsel, reviewing all material filings, including approving the Agreement, and maintaining regular contact with Class Counsel throughout the litigation, mediation, and post-mediation negotiation process. Plaintiff was also prepared to devote additional time to deposition and to be available for trial, if necessary. The result of his efforts, coupled with those of Class Counsel, provided a substantial benefit to the Settlement Class. In so doing, Plaintiff was integral to investigating the claims, forming the theory of the case and litigating it through settlement. Class Counsel Decl. ¶ 13.

Class Counsel is aware of the recent Eleventh Circuit precedent that calls into question the availability of the requested Service Award. *See Johnson v. NPAS Sol'ns., LLC*, No. 18-12344, 2020 WL 5553312, at *11 (11th Cir. Sept. 17, 2020) (petition for rehearing *en banc* pending). In the event that this issue remains unresolved when the Court decides the instant motion, Plaintiff requests that the Court defer resolution of this issue pending a final decision in *Johnson*, as other courts have done.[3]

If the Eleventh Circuit denies the petition for rehearing *en banc* in *Johnson*, then Plaintiff will withdraw its request for a Service Award at the time of Final Approval. If the Eleventh Circuit grants the petition for rehearing en banc in *Johnson* and reverses its decision, then Plaintiff will request that the Court grant it's request for a Service Award.

"[T]he current best practice appears to be to approve the settlement except for the incentive award, but to retain jurisdiction to allow Plaintiff to renew the request if *NPAS* is reversed." *Steven D. Marcrum v. Hobby Lobby Stores, Inc.*, 2021 WL 3710133, at *5 (N.D. Ala. Aug. 20, 2021).

---

3. *See e.g., Williams, et al.*, No. 1:20-cv-23564-MGC, at *94 (reserving jurisdiction to entertain a motion for class representative service awards); *See also Mosley v. Lozano Insurance Adjusters, Inc.*, No. 3:19-CV-379-J-32JRK, 2021 WL 293243, at *5 (M.D. Fla. Jan. 11, 2021), *report and recommendation adopted,* No. 3:19-CV-379-J-32JRK, 2021 WL 289031 (M.D. Fla. Jan. 28, 2021) (retaining jurisdiction to decide the question of service awards "pending a final decision in *Johnson*" and directing the parties "to deposit the $5,000 into the registry of the Court pending the Court's determination of the service award issue"); *Harvey v. Hammel & Kaplan Co., LLC*, No. 3:19-CV-640-J-32JRK, 2020 WL 7138568, at *3–4 (M.D. Fla. Dec. 7, 2020) ("[T]he Court will defer the issue of a service award due to a recent Eleventh Circuit case that bars such awards to plaintiffs in class action settlements," directing the defendant to deposit the agreed to service award "in the registry of the Court, to be held pending the Eleventh Circuit's issuance of a mandate in *Johnson*," and retaining jurisdiction to "determine whether and how the funds will be distributed once *Johnson* is final.").

16

Because no mandate has been issued and a ruling for rehearing *en banc* is pending, the "Court [should] follow the lead of its sister courts in this Circuit . . . [and] retain jurisdiction for the limited purpose of revisiting the denial of [a] service award[] should *Johnson* ultimately be overturned." *Breandan Cotter & Jack Dinh v. Checkers Drive-In Restaurants, Inc.*, 2021 WL 3773414, at *13 (M.D. Fla. Aug. 25, 2021) (citing *Marcrum*, 2021 WL 3710133, at *5; *Fruitstone v. Spartan Race, Inc.*, 2021 WL 2012362, at *13 (S.D. Fla. May 20, 2021); *Metzler, et al. v. Medical Management International, Inc., et al.*, 2020 WL 5994537 (M.D. Fla. October 9, 2020); *See also In Re" 21st Century Oncology Customer Data Security Breach Litigation*, 8:16-md-2737 (MDL No. 2737), Doc. 269 (M.D. Fla. 2021); *Janicijevic v. Classica Cruise Operator, Ltd.*, 2021 WL 2012366, at *10 (S.D. Fla. May 20, 2021); *Breandan Cotter & Jack Dinh v. Checkers Drive-In Restaurants, Inc.*, 2021 WL 3773414, at *13 (M.D. Fla. Aug. 25, 2021).

V.   **CONCLUSION**

Plaintiff and Class Counsel respectfully request that this Court approve the requested award of Attorneys' Fees in the amount of $495,000.00, award reimbursement of costs in the amount of $6,696.58, and award a Service Award in the amount of $5,000 to the Class Representative.

Dated:  December 30, 2021.              Respectfully submitted,

*/s/ Seth M. Lehrman*
Joshua H. Eggnatz, Esq. (FBN 0067926)
E-mail: JEggnatz@JusticeEarned.com
Michael J. Pascucci, Esq. (FBN 0083397)
E-mail: MPascucci@JusticeEarned.com
**EGGNATZ | PASCUCCI**
7450 Griffin Road. Suite 230
Davie, FL 33314
Telephone: 954-889-3359
Facsimile: 954-889-5913

Seth M. Lehrman (FBN 132896)
E-mail: seth@epllc.com
**EDWARDS POTTINGER LLC.**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 30, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Seth M. Lehrman*
Seth M. Lehrman

## SERVICE LIST

Holly M. Hamilton, Esq.
Fla. Bar No.: 113307
HXHamilton@MDWCG.com,
DMVugrinovich@MDWCG.com and
SLThompson@MDWCG.com
**MARSHALL, DENNEHEY**
**WARNER, COLEMAN & GOGGIN**
2400 East Commercial Blvd., Suite 1100
Fort Lauderdale, FL 33308
Telephone: 954-847-4920
Facsimile: 954-627-6640

Danielle M. Vugrinovich, Esquire
(Admitted Pro Hac Vice)
DMVugrinovich@MDWCG.com
**MARSHALL, DENNEHEY, WARNER,**
**COLEMAN & GOGGIN**
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA 15219
Telephone: 412-803-1140
Facsimile: 412-803-1188

*Attorneys for Defendant*