**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:20-cv-24279-KMW**

PET PARADE, INC., on behalf of itself and
all others similarly situated,

      Plaintiff,

vs.

STOKES HEALTHCARE, INC., a foreign
company, doing business as EPICUR PHARMA,

      Defendant.
_____/

## **UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

      Plaintiff Pet Parade, Inc. initiated this action against Stokes Healthcare, Inc., a foreign company, doing business as Epicur Pharma ("Epicur" or "Defendant") under the Junk Fax Prevention Act ("JFPA") provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").[1] Notice has been provided to the Settlement Class pursuant to the Order Granting Preliminary Approval [DE 66], and the Claim and Objection Deadlines have passed. Plaintiff and Class Counsel now seek Final Approval of the Settlement on behalf of consumers who, like Plaintiff, were allegedly sent unsolicited facsimile advertisements.

**I.     INTRODUCTION**

      Plaintiff alleges that Defendant, through its vendor and fax broadcaster, sent unsolicited fax advertisements to recipients that are identified on Defendant's Master Fax List. While Defendant contends that many of the recipients invited or otherwise solicited the fax advertisements, Plaintiff contends that all of the fax advertisements violate the JPFA regardless, because they did not contain a required opt-out notice.

      The Agreement the parties reached provides cash compensation for the alleged unsolicited facsimile advertisements sent to Plaintiff and Settlement Class Members. The Agreement was

---

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement ("Agreement") [DE 61-1].

1

negotiated over the course of more than two-months, including two full day mediations conducted by mediator Jeffrey Grubman of JAMS, as well as several post-mediation negotiations with and without the assistance of Mr. Grubman.

Plaintiff and Class Counsel believe that the claims asserted in the Action have merit. Although Defendant has contested the claims, the parties now seek to fully and finally settle the Action pursuant to the terms and conditions set forth in the Settlement Agreement, in light of the risks of continued litigation, as well as the delays and uncertainties inherent in such litigation and any subsequent appeal. Plaintiff and Class Counsel have thus concluded that it is in the best interests of the class to settle the Action.

The Agreement required Defendant to fund a settlement in the amount up to $1,650,000.00, from which it is required to pay up to $500.00 to each Settlement Class Member who submits a valid Claim, and an award of attorneys' fees and costs and a potential Service Award to the named Plaintiff, as well as injunctive relief.

Plaintiff and Class Counsel now request that the Court: (1) grant Final Approval to the Settlement; (2) certify for settlement purposes the Settlement Class, pursuant to Rule 23(a), Rule 23(b)(3) and Rule 23(e) of the Federal Rules of Civil Procedure; (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the attorneys listed in paragraph I(J) of the Agreement; (5) retain jurisdiction and defer resolution of the Plaintiff's requested Service Award; (6) award Class Counsel Attorneys' Fees and reimbursement of certain expenses; and (7) enter Final Judgment dismissing the Action with prejudice.

## II.   MOTION FOR FINAL APPROVAL

### A.   Procedural History

On October 19, 2020, Plaintiff filed its original Complaint. [DE 1]. The Parties promptly conducted their scheduling conference and filed their Joint Planning and Scheduling Report on December 2, 2020 [DE 12]. Written discovery and document requests were served and responded to thereafter.

Plaintiff filed its Motion for Conditional Class Certification on January 8, 2021 [DE 19]. Defendant filed its Opposition to Conditional Certification on January 22, 2021 [DE 20]. Plaintiff's Reply was filed on January 29, 2021 [DE 21].

On February 19, 2021, with the assistance of mediator Jeffrey Grubman of JAMS, counsel for the Parties mediated and engaged in intensive arm's-length negotiations and an all-day

mediation. Although the case did not settle, significant progress was made, and the Parties agreed to attend a second mediation conference. *See* Joint Declaration in Support of Preliminary Approval ¶ 11 [DE 46-2] ("Class Counsel Decl.")

The Parties attended a second mediation on March 15, 2021, with Jeffrey Grubman. While a final class-wide settlement was still not reached that day, more progress was made. The Parties engaged in ongoing settlement negotiations while continuing to litigate the case. Class Counsel Decl. ¶ 12. Plaintiff served additional rounds of written discovery, including supplemental discovery following the parties' mediation conferences. *Id*.

On March 18, 2021 Plaintiff filed its Motion to Appoint Counsel as Co-lead Interim Class Counsel [DE 34]. On April 6, 2021, the Court appointed Edwards Pottinger, LLC and Eggnatz Pascucci, P.A. as co-lead interim class counsel [DE 38]. That same day, the Parties finally reached a class-wide settlement in principal and filed their Joint Notice of Settlement [DE 39].

The parties then drafted a term sheet memorializing the basic settlement terms. Class Counsel Decl. ¶ 13. The other essential terms of the Agreement were negotiated over the course of month following the Parties Notice of Settlement. *Id*. Discovery revealed that 11,205 recipients to whom Defendant sent facsimile advertisements, are identified on Defendant's Master Fax List. *Id*. ¶ 7.

On May 27, 2021, Plaintiff filed its Unopposed Renewed Motion for Preliminary Approval [DE 46], which, after two hearings to preliminarily evaluate fairness subject to Notice to the Settlement Class, was granted on October 18, 2021. *See* Order Granting Preliminary Approval [DE 66]. On November 29, 2021, Angeion Group ("Angeion"), the Settlement Administrator, disseminated Class Notice in accordance with the Court approved Notice Program. *See* Declaration of Andre Mack on behalf of Angeion, at ¶¶ 7-16, as attached hereto as **Exhibit A** ("Mack Decl.). On December 30, 2021, Plaintiff filed their Application for Attorneys' Fees, Costs, and Service Award [DE 68]. The Claim Submission deadline and Objection/Opt-Out deadline was January 13, 2022.

Settlement Class Members' reaction to the Settlement has been overwhelmingly positive – no Settlement Class Members objected to the Settlement. Mack Decl. ¶ 18.

    **B.**    <u>**Summary of the Settlement**</u>

The Settlement terms are detailed in the Agreement. *See* Settlement Agreement [DE 61-1]. The following is a summary of its material terms.

### 1. *The Settlement Class*

The Settlement Class is an opt-out class under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Settlement Class is defined as:

> All persons identified on Epicur's Master Fax List who (1) during the four-year period prior to the filing of this action through the date of preliminary approval, (2) were sent a telephone facsimile message advertising the commercial availability or quality of any property, goods, or services by or on behalf of Epicur, (3) that did not display an opt-out notice on the first page stating that the recipient may make a request to the sender of the advertisement not to send any future advertisements to a telephone facsimile machine or machines and that failure to comply, within 30 days, would be unlawful.

Agreement at I.GG.

### 2. *Monetary Relief*

The Settlement requires Defendant to make available up to $1,650,000.00 cash for the benefit of the Settlement Class. In order to receive a portion of the Settlement Fund, Settlement Class members were required to complete a Claim Form.

Direct notice was provided by U.S. Mail or facsimile (and e-mailed if e-mail was provided by a Settlement Class Member) and Claim Forms were available at the Settlement Website. Each Settlement Class Member who submitted a valid Claim Form will receive a cash Claim Settlement Payment in the amount of $500.00.

The Claim Submission deadline was January 13, 2022. Three hundred Twenty (320) timely claims were submitted. Mack Decl. at ¶17.

### 3. *Class Release*

In exchange for the benefits conferred by the Settlement, all Settlement Class Members will be deemed to have released Defendant from claims related to the subject matter of the Action. The detailed release language is found in Section V of the Agreement.

### 4. *Settlement Notice*

The Notice Program was designed to provide the best notice practicable and was tailored to use the information Defendant had available about Settlement Class Members. The Notice Program was reasonably calculated under the circumstances to apprise the Settlement Class of the pendency of the Action, the terms of the Settlement, Class Counsel's Attorneys' Fee application and request for potential Service Award for Plaintiff, and their rights to opt-out of the Settlement

Class or object to the Settlement. *See* Order Granting Preliminary Approval [DE 66, ¶ 14]; Agreement, I.K and III(B).

The Notices and Notice Program constituted sufficient notice, and satisfied all applicable requirements of law including, but not limited to, Federal Rule of Civil Procedure 23 and the constitutional requirement of due process.

The Notice Program was implemented and carried out in accordance with the Order Granting Preliminary Approval and the terms of the Agreement. Mack Decl. ¶ 3.

### 5. *Attorneys' Fees, Costs, and Service Award*

Class Counsel also petitioned for Attorneys' fees of $495,000.00, which is equal to thirty percent (30%) of the Settlement Fund, plus expenses in the amount of $6,696.58. Agreement, II.D.1. Class Counsel petitioned for a Service Award of $5,000 for the Class Representative, but requests that the Court retain jurisdiction and defer resolution of the Service Award request until a final decision is reached in *Johnson v. NPAS Sol'ns., LLC*, 975 F.3d 1244, (11th Cir. 2020). Agreement at II.D.2. Plaintiff's Application for Attorneys' Fees, Costs, and Service Award was filed and posted to the Settlement Website on December 30, 2021.

### C. **Argument**

Court approval is required for settlement of a class action. FED. R. CIV. P. 23(e). Federal courts have long recognized a strong policy and presumption in favor of class settlements. The Rule 23(e) analysis should be "informed by the strong judicial policy favoring settlements as well as the realization that compromise is the essence of settlement." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982). In evaluating a proposed class settlement, the Court "will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.'" *Rankin v. Rots*, 2006 WL 1876538, at *3 (E.D. Mich. June 28, 2006). Class settlements minimize the litigation expenses of the parties and reduce the strain that litigation imposes upon already scarce judicial resources. Therefore, "federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). The Settlement here is more than sufficient under Rule 23(e) and Final Approval is clearly warranted.

### 1. *Notice was the Best Practicable and was Reasonably Calculated to Inform the Settlement Class of its Rights.*

The Notice Program consisted of: (1) direct mail postcard notice if a physical address could be secured, direct facsimile notice if a physical address could not be secured, and by e-mail if provided ("Mail Notice"), to each Settlement Class Member; and (2) a "Long-Form" Notice with more detail than the direct Mail Notice, which has been available on the Settlement Website and via mail upon request. Mack Decl. ¶¶ 7-16.

Each facet of the Notice Program was timely and properly accomplished. The Notice Administrator received data from Defendant that identified a combination of names, address, facsimile numbers, and/or e-mail addresses, and was able to identify 10,020 unique recipients on the Master Fax List, and sufficient information for those recipients to be issued direct notice. *Id*. at ¶ 5. The Notice Administrator delivered direct notice by mail to 9,361 identified Settlement Class Members' postal addresses, 611 by facsimile, and 2,407 by e-mail. *Id.* at ¶¶ 7-11. Prior to mailing the postcards the Administrator ran them through the National Change of Address Database. *Id*. at ¶ 11.

The Settlement Administrator also established the Settlement Website, www.EpicurSettlement.com, which went live on November 29, 2021. Mack Decl. ¶ 12. The Long Form Notice, along with other key pleadings, have been available on the Settlement Website and upon request to the Settlement Administrator, to enable Settlement Class members to obtain detailed information about the Action and the Settlement. *Id*. In addition, a toll-free number was established. *Id*. at ¶ 15. By calling, Settlement Class Members were able listen to answers utilizing an interactive voice response system to frequently asked questions. *Id*.

The Court-approved Notice and Notice Program satisfied due process requirements because they described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig*., 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice, among other things, defined the Settlement Class, described the release provided to Defendant under the Agreement, as well as the amount and proposed distribution of the Settlement proceeds, and informed Settlement Class members of their right to opt-out or object, the procedures for doing so, and the time and place of the Final Approval Hearing. It also notified Settlement Class Members that a final judgment would bind them unless they opted-out and told them where they

could get more information.  Further, the Notice described Class Counsel's intention to seek attorneys' fees of up to 30% of the Settlement Fund, plus litigation expenses, and a potential Service Award for the Class Representative.  Settlement Class Members were provided with the best practicable notice that was "reasonably calculated, under [the] circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812, 105 S. Ct. 2965, 2974, 86 L. Ed. 2d 628 (1985) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-315, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950)).

The Settlement Administrator has received two (2) requests for exclusion and ***no objections*** to the Settlement have been filed. Mack Decl. at ¶ 18.

### 2. *The Settlement Should Be Approved as Fair, Adequate and Reasonable.*

In deciding whether to approve the Settlement, the Court will analyze whether it is "fair, adequate, reasonable, and not the product of collusion." *Leverso v. Southtrust Bank*, 18 F.3d 1527, 1530 (11th Cir. 1994); *see also Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984).  A settlement is fair, reasonable and adequate when "the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." *In re Lorazepam & Clorazepate Antitrust Litig.*, MDL No. 1290, 2003 WL 22037741, at *2 (D.D.C. June 16, 2003) (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)).  Importantly, the Court is "not called upon to determine whether the settlement reached by the parties is the best possible deal, nor whether class members will receive as much from a settlement as they might have recovered from victory at trial." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1014 (N.D. Ill. 2000) (citations omitted).

Under Federal Civil Procedure Rule 23(e)(2) a court may approve a class action settlement after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

>   (iii) the terms of any proposed award of attorney's fees, including timing of payment;
>
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
>
>   (D) the proposal treats class members equitably relative to each other.

The Eleventh Circuit has also identified <u>six factors</u> to be considered in analyzing the fairness, reasonableness and adequacy of a class settlement under Rule 23(e):

>   (1)   the existence of fraud or collusion behind the settlement;
>   (2)   the complexity, expense, and likely duration of the litigation;
>   (3)   the stage of the proceedings and the amount of discovery completed;
>   (4)   the probability of the plaintiffs' success on the merits;
>   (5)   the range of possible recovery; and
>   (6)   the opinions of the class counsel, class representatives, and the substance and amount of opposition to the settlement.

*Leverso*, 18 F.3d at 1530 n.6; *see also Bennett*, 737 F.2d at 986. The analysis of these factors set forth below shows this Settlement to be eminently fair, adequate and reasonable.

### a. The Settlement Was the Result of Arm's-Length Negotiations with the Assistance of an Experienced Mediator (Fed. R. Civ. P. 23(e)(2)(B)).

Plaintiff and the Settlement Class were represented by experienced counsel throughout the negotiations. Class Counsel and Defendant engaged in formal mediation sessions, as well as several pre and post mediation informal settlement negotiations, all overseen by an experienced and well-respected mediator. All negotiations were arm's-length and extensive. *See Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (concluding that class settlement was not collusive in part because it was overseen by "an experienced and well-respected mediator"); Class Counsel Decl. ¶¶ 10-11.

### b. The Settlement Will Avert Years of Complex and Expensive Litigation (Fed. R. Civ. P. 23(e)(2)(C)(i)).

The claims and defenses here are complex. Recovery by any means other than settlement would require additional years of litigation. *See United States v. Glens Falls Newspapers, Inc.*, 160 F. 3d 853, 856 (2d Cir. 1998) (noting that "a principal function of a trial judge is to foster an atmosphere of open discussion among the parties' attorneys and representatives so that litigation

may be settled promptly and fairly so as to avoid the uncertainty, expense and delay inherent in a trial.").

In contrast, the Settlement provides immediate and substantial monetary benefits to the Settlement Class. Where unnecessary additional costs and delay are likely to be incurred absent a settlement, "it [is] proper to take the bird in the hand instead of a prospective flock in the bush." *Lipuma American Express Co.,* 406 F. Supp. 2d 1298, 1323 (S.D. Fla. 2005) (quoting *In re Shell Oil Refinery,* 155 F.R.D. 552, 560 (E.D.La.1993)). *See also Perez*, 501 F. Supp. 2d at 1381 ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear.").

Particularly because the "demand for time on the existing judicial system must be evaluated in determining the reasonableness of the settlement," *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992) (citation omitted), there can be no doubt about the adequacy of the present Settlement, which provides reasonable benefits to the Settlement Class.

      **c.**     **The Facts Are Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment (Fed. R. Civ. P. 23(e)(2)(A)).**

Courts also consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Class Counsel negotiated the Settlement with the benefit of formal and informal party and non-party discovery. *See* Joint Decl. of Class Counsel in Support of Plaintiff's Application for Attorneys' Fees, Costs, and Service Award ¶ 5. [DE 68-1] ("Fee Decl."). Specifically, Class Counsel directed significant discovery to Defendant including three sets of document requests, interrogatories, and two sets of requests for admission, in addition to serving non-party subpoenas. Class Counsel Decl. ¶ 21. Class Counsel spent considerable time conducting discovery and reviewing the production received for litigation and settlement purposes. Fee Decl. ¶ 5. Class Counsel also spent considerable time researching Defendant's numerous defenses and financial data. *Id*. Class Counsel litigated the Action through contested conditional class certification. As such, Class Counsel's analysis and understanding of the legal obstacles positioned them to evaluate

with the strengths and weaknesses of Plaintiff's claims and Defendant's defenses, as well as the range and amount of damages that were potentially recoverable if the Action proceeded to judgment on a class-wide basis and Defendant's inability to pay such a judgment. *Id* ¶ 6.

This Settlement is comparable to other, similar TCPA class settlements that have been litigated by Class Counsel and approved by courts in this District, including *Marengo v. Miami Research Assoc., LLC.*, No. 1:17-cv-20459-KMW (S.D. Fla. July 23, 2018) and *Medgebow v. Checkers Drive-In Restaurants, Inc.*, 9:19-cv-80090-BB (S.D. Fla. Sept. 18, 2019). For these reasons, Plaintiff and Class Counsel have adequately represented the Settlement Class.

### d. Plaintiff and the Class Faced Significant Obstacles to Prevailing (Fed. R. Civ. P. 23(e)(2)(C)(i)).

The "likelihood and extent of any recovery from the defendants absent . . . settlement" is another important factor in assessing the reasonableness of a settlement. *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993). Where success at trial is not certain for plaintiffs, this factor weighs in favor of approving the settlement. *See Fresco v. Auto. Directions, Inc.*, No. 03-CIV-61063-MARTINE, 2009 WL 9054828, at *4 (S.D. Fla. Jan. 20, 2009). Class Counsel believes that Plaintiff had a strong case against Defendant. Even so, Class Counsel are mindful that Defendant advanced significant defenses that would have been required to overcome in the absence of the Settlement. Plaintiff faced significant litigation risks.

Specifically, Defendant contends that it did not transmit any *unsolicited* facsimile advertisements. Class Counsel Decl. ¶¶ 15-16. Defendant is an FDA registered 503B outsourcing facility that formulates, manufacturers, and provides custom prescription veterinary medicines to veterinarians and veterinary hospitals. *Id*. ¶ 18. Plaintiff is an animal clinic. Defendant contends that Plaintiff and certain Class Members attended various veterinary conferences where Plaintiff and Class Members provided contact information to Defendant, thereby inviting contact by Defendant, thus rendering the faxes *solicited* and not subject to the TCPA. *Id*. ¶ 16. Defendant also contends that the JFPA of the TCPA only applies to faxes which are solely received on a traditional fax machine (as opposed to a digital fax machine), thereby rendering the Class unascertainable and defeating class certification. *Id*. Defendant further maintains that many individualized inquiries predominate over the claims and that almost 90% of the recipients identified on its Master Fax List are existing customers. *Id.* Defendant asserts that because faxes were sent to both its customers and potential customers that allegedly provided it with contact

10

information, that all of the faxes were "solicited," and that 11th Circuit case law supports an argument that a "solicited" fax does not require an opt-out notice. *See Gorss Motels, Inc. v. Safemark Systems, Inc.* 931 F.3d 1094 (11th Cir. 2019). *Id.* Last, Defendant asserts that even if a fax is deemed unsolicited (within the ambit of the TCPA), it is an open legal question whether the opt-out notice at issue is valid and that fact, combined with an established business relationship as well as the Plaintiff's publication of its fax number renders Epicur to have no liability to Plaintiff or the Settlement Class under the TCPA

If the Court found that these defenses barred Plaintiff's claims, then Plaintiff and the Settlement Class would recover nothing. Defendant was prepared to vigorously litigate these issues, as demonstrated in its Opposition to Conditional Class Certification [DE 20].

This Action involved several major litigation risks that loomed in the absence of settlement including, but not limited to, trial, as well as appellate review following a verdict. Apart from the risks, continued litigation would have involved substantial delay and expense, which further counsels in favor of Final Approval. Defendant's inability to pay a full potential class-wide judgment is also an important factor in favor of settlement. The uncertainties and delays from this process would have been significant. Fee Decl. ¶¶ 7-10.

Given the myriad risks attending these claims, as well as the certainty of substantial delay and expense from ongoing litigation, the Settlement represents a fair compromise. *See, e.g.*, *Haynes v. Shoney's*, No. 89-30093-RV, 1993 U.S. Dist. LEXIS 749, at *16-17 (N.D. Fla. Jan. 25, 1993) ("The risks for all parties should this case go to trial would be substantial. …. It is possible that trial on the merits would result in … no relief for the class members. … Based on … the factual and legal obstacles facing both sides should this matter continue to trial, I am convinced that the settlement … is a fair and reasonable compromise.").

      **e.** **The Benefits Provided by the Settlement are Fair, Adequate and Reasonable Compared to the Range of Possible Recovery (Fed. R. Civ. P. 23(e)(2)(C)).**

As an initial, overarching consideration, the Agreement provides significant and meaningful monetary and injunctive relief to the Settlement Class – both of Plaintiff's desired litigation goals. In determining whether a settlement is fair given the potential range of recovery, the Court should be guided by "the fact that a proposed settlement [that] amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate." *Behrens v.*

*Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988), *aff'd*, 899 F.2d 21 (11th Cir. 1990). Indeed, "[a] settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery." *Id*. As in most litigation, "[t]he range of potential recovery spans from a finding of non-liability through varying levels of injunctive relief, in addition to any monetary benefits to class members." *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1326 (S.D. Fla. 2007) (citing *Lipuma v. American Exprress Co.,* 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005*)*, (internal quotation omitted). However, "the Court's role is not to engage in a claim-by-claim, dollar-by-dollar evaluation, but rather, to evaluate the proposed settlement in its totality." *Figueroa*, 517 F. Supp. 2d at 1326

Here, Class Counsel were well-positioned to evaluate the strengths and weaknesses of Plaintiff's claims, as well as the appropriate basis upon which to settle them. Each Settlement Class Claimant who opted to participate in the Settlement will receive $500.00 cash. This represents a substantial payment. Pursuant to the TCPA, each injured Settlement Class Member could have received only $500.00 for each non-willful violative message received upon a successful verdict at trial, but such a result was very uncertain. The Settlement Class will also benefit from the injunctive relief secured by the Agreement, which requires a change in business practices to ensure future TCPA compliance.

This Settlement provides an extremely fair and reasonable recovery to Settlement Class Members when considering Defendant's defenses, as well as the challenging, unpredictable path of litigation that Plaintiff would otherwise have continued to face in the trial and appellate courts. Given the ranges of typical individual recovery to settlement class members in other TCPA cases, the settlement benefit to Class Members here is significant.[2]

---

2. The majority of the approved TCPA class action settlements that provide cash or merchandise to class members is typically less than $100. *See e.g. Spillman v. RPM Pizza, LLC*, Case No. 3:10-cv-00349 (M.D. Louisiana)(DE 244, 245)($15 recovery per claimant); *Desai v. ADT Security Systems*, Case No. 1:11-cv-01925 (N.D. Illinois)(DE 240, 243) ($47 recovery per claimant); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (N.D. Illinois)(DE 74) ($28.13 recovery per claimant); *Paldo Sign and Display Company v. Topsail Sportswear*, Case No. 1:08-cv-05959 (N.D. Illinois)(DE 116) ($42 recovery per fax); *Adams v. AllianceOne Receivables Management, Inc.*, 3:08-cv-00248 (S.D. California) ($40 recovery per claimant)(DE 116, 137; *Agne v. Papa John's International, et al.*, 2:10-cv-01139 (W.D. Washington)(DE 389) ($50 recovery plus $13 merchandise per claimant); *Bellows v. NCO Financial Systems, Inc.*, 3:07-cv-01413 (S.D. California)(DE 38 at 6) ($70 recovery per claimant); *Clark v. Payless ShoeSource, Inc.*, 2:09-cv-00915 (W.D. Wash.)(DE 61 at 3; 72) ($10 merchandise certificate per claimant);

This Settlement is comparable to other, similar TCPA class settlements that have been litigated by Class Counsel and approved by courts in this District, including *Marengo v. Miami Research Assoc., LLC.*, No. 1:17-cv-20459-KMW (S.D. Fla. July 23, 2018) and *Medgebow v. Checkers Drive-In Restaurants, Inc.*, 9:19-cv-80090-BB (S.D. Fla. Sept. 18, 2019). For these reasons, Plaintiff and Class Counsel have adequately represented the Settlement Class.

### f. Class Counsel, the Plaintiff, and Absent Settlement Class Members Favor Approval (Fed. R. Civ. P. 23(e)(2)(A)).

Class Counsel strongly endorse the Settlement. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988), aff'd, 893 F.2d 347 (11th Cir. 1989); *see also Domestic Air*, 148 F.R.D. at 312-13 ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted).

The reaction of the Class, the only new, and perhaps most important, information about the Settlement since Preliminary Approval, weighs strongly in favor of the Settlement. There has been no opposition to the Settlement, as not a single objection was filed. This is another indication that the Settlement Class is clearly satisfied with the Settlement. Even if there were some objections, it is settled that "[a] small number of objectors from a plaintiff class of many thousands is strong evidence of a settlement's fairness and reasonableness." *Association for Disabled Americans v. Amoco Oil Co.*, 211 F.R.D. 457, 467 (S.D. Fla. 2002). *See also Lipuma*, 406 F. Supp. 2d at 1324 ("a low percentage of objections points to the reasonableness of a proposed settlement and supports

---

*Cubbage v. The Talbots, Inc. et al.*, 2:09-cv-00911 (W.D. Wash.)(DE 114, ¶ 11) ($40 or $80 merchandise certificate per claimant); *Hovila v. Tween Brands, Inc.*, 2:09-cv-00491 (W.D. Wash.)(DE 12, ¶ 12) ($20 or $45 merchandise certificate); *In re Jiffy Lube International, Inc. Text Spam Litig.*, 3:11-MD-02261 (S.D. Cal.)(DEs 90-1 at 7-8; 97) ($15); *Kazemi v. Payless ShoeSource, Inc. et al.*, 3:09-cv-05142 (N.D. Cal.)(DE 94, ¶ 10) ($15 merchandise certificate); *Kwan v. Clearwire Corp.*, 2:09-cv-01392 (W.D. Wash.)(DEs 201) ($53 per call); *Lemieux v. Global Credit & Collection Corp.*, 3:08-cv-01012 (S.D. Cal.)(DE 46, at 4) ($70 recovery per claimant); *Malta v. Freddie Mac & Wells Fargo Home Mortgage*, 3:10-cv-01290 (S.D. Cal.)(DE 91 at 5) ($85 recovery per claimant); *Sarabi v. Weltman, Weinberg & Reis Co.*, 3:10-cv-01777 (S.D. Cal.)(DE 42 at 6) (48 recovery per claimant); *Steinfeld, et al. v. Discover Financial Services, et al.*, 3:12-cv-01118 (N.D. Cal.)(DE 65 at 17) ($47 recovery per claimant); and *Wojcik v. Buffalo Bills, Inc.*, 8:12-cv-02414 (M.D. Fla.)(DE 77 at 5) ($58-$75 recovery per claimant).

its approval."); *Allapattah Servs., Inc. v. Exxon Corp.*, No. 91-cv-0986, 2006 WL 1132371, at *13 (S.D. Fla. Apr. 7, 2006) ("I infer from [the] absence of a significant number of objections that the majority of the Class found [the settlement agreement] reasonable and fair."); *see also Rodriguez v. It's Just Lunch International*, Case No. 07-cv-09227, 2020 WL 1030983, *4 (S.D.N.Y. March 2, 2020) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

g.  **Other Fed. R. Civ. P. 23(e)(2) Factors to Consider.**

The Settlement satisfies the requirements of R. 23(e)(2) as discussed *infra*.

i.  **Fed. R. Civ. P. 23(e)(2)(C)(ii) - The effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.**

The Settlement Administrator, Angeion Group, is highly skilled in processing class claims and distributing the proceeds to claimants. The Settlement's plan for allocation of the Settlement benefits is straightforward: Every Settlement Class Member who submitted a timely and valid claim will receive a $500 cash payment. The Settlement Agreement's plan for distribution is efficient because Claim Forms were able to be submitted online on the Settlement Website or by mail. Other than completing a Claim Form to verify identity and facsimile number, Settlement Class Members were not required to provide any additional proof to validate their claim.

ii.  **Fed. R. Civ. P. 23(e)(2)(C)(iii) - The terms of any proposed award of attorney's fees, including timing of payment.**

The Settlement Agreement provides that Class Counsel may apply for Attorneys' Fees of up to thirty percent (30%) of the Settlement Fund, plus expenses not to exceed Fifteen Thousand Dollars ($15,000.00). Agreement, II.D.1. As discussed in Plaintiff's separately filed Motion for Attorneys' Fees, Cost, and Service Award, since the attorneys' fees and costs sought are in line with typical awards in this Circuit and District, this factor weighs in favor of final approval. The Parties did not negotiate or reach an agreement regarding fees and costs until after agreeing on all other material terms of the Settlement. Fee Decl. ¶ 3. The Agreement provides that Attorneys' Fees will be paid 33 days after the Order of Final Approval is entered.

> **iii. Fed. R. Civ. P. 23(e)(2)(C)(iv) - Any agreement required to be identified under Rule 23(e)(3).**

The Agreement, setting forth the terms of the Settlement and the Attorneys' Fees sought, was previously filed with the Court on September 29, 2021 [DE 61-1]. The Court preliminarily approved the Agreement as fair, adequate, and reasonable in its Order Granting Preliminary Approval. [DE 66]. The Agreement was posted on the Settlement Website pursuant to the Court approved Notice Program and no objections were filed or served by any Settlement Class Member.

Apart from the Agreement, there are no additional agreements between the Parties in connection with the Settlement. Accordingly, this factor weighs in favor of final approval of the Settlement

> **iv. Fed. R. Civ. P. 23(e)(2)(D) - The proposal treats class members equitably relative to each other.**

Each Settlement Class Member is treated in the same manner with respect to the claims they are releasing and their eligibility for an award. Each Settlement Class Member also has the same $500 cash payment available to them, even without providing proof. A simple Claim Form verifying the Settlement Class Member's name and facsimile number is all that was required. This process is in line with the 2018 Committee Notes' directive to "deter or defeat unjustified claims" without being "unduly demanding." *See* Fed. R. Civ. P. 23, 2018 Committee Notes, available at https://www.law.cornell.edu/rules/frcp/rule_23.

### 3. *The Court Should Certify the Settlement Class.*

Plaintiff and Class Counsel respectfully request that the Court certify the Settlement Class. "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

#### A. Certification under Rule 23(a) and Rule 23(b)(3)

Certification under Rule 23(a) of the Federal Rules of Civil Procedure requires that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Under Rule 23(b)(3), certification is appropriate if the questions of law

15

or fact common to the class members predominate over individual issues of law or fact and if a class action is superior to other available methods for the fair and adjudication of the controversy. For the purpose of considering a settlement, all of the factors are satisfied.

The numerosity requirement of Rule 23(a) is satisfied because the Settlement Class consists of approximately 11,205 individuals, and joinder of all such persons is impracticable. *See* Fed. R. Civ. P. 23(a)(1); *Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011) (citation omitted). Here, the commonality requirement is readily satisfied. There are multiple questions of law and fact – centering on Defendant's fax campaign – that are common to the Settlement Class, that are alleged to have injured all Settlement Class members in the same way, and that would generate common answers.

For similar reasons, Plaintiff's claims are reasonably coextensive with those of the absent Class Members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"). Plaintiff is typical of absent Settlement Class Members because it received the same facsimile advertisements, it suffered the same injuries as them, and they will all benefit from the relief achieved.

Plaintiff and Class Counsel also satisfy the adequacy of representation requirement. Adequacy under Rule 23(a)(4) relates to (1) whether the proposed class representative has interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001). The determinative factor "is the forthrightness and vigor with which the representative party can be expected to assert and defend the interests of the members of the class." *Lyons v. Georgia-Pacific Corp. Salaried Employees Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (internal quotation marks omitted). Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and the absent Settlement Class members have the same

16

interest in the relief afforded by the Settlement, and the absent Settlement Class Members have no diverging interests. Further, Plaintiff and the Settlement Class are represented by qualified and competent Class Counsel who have extensive experience and expertise prosecuting complex class actions.

Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc*., 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted). Plaintiff readily satisfies the Rule 23(b)(3) predominance requirement because liability questions common to all Settlement Class members substantially outweigh any possible issues that are individual to each Settlement Class Member. The necessity for the Court to deal with any individual issues in the litigation context is also attenuated in the settlement context. Further, resolution of thousands of claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* Fed. R. Civ. P. 23(b)(3). For these reasons, the Court should certify the Settlement Class.

Based on the foregoing, the Settlement is fair, adequate and reasonable.

## III. CONCLUSION

Plaintiff and Class Counsel respectfully request that this Court: (1) grant Final Approval to the Settlement and enter the proposed order attached as **Exhibit B**; (2) certify for settlement purposes the Settlement Class pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(3), and 23(e); (3) appoint Plaintiff as Class Representative; (4) appoint as Class Counsel the law firms and attorneys listed in paragraph I(J) of the Agreement; (5) retain jurisdiction and defer resolution of the Plaintiff's requested Service Award; (6) award Class Counsel attorneys' fees in the amount of $495,000.00, and award reimbursement of costs in the amount of $6,696.58; and (7) enter Final Judgment dismissing the Action with prejudice.

## CERTIFICATE OF GOOD FAITH CONFERRAL

The undersigned attorney, in compliance with S.D. Local Rule 7.1(a)(3), certifies that the movant has conferred with counsel for Defendant, and that Defendant does not oppose the relief requested in the instant motion.

Dated: February 3, 2022.                    Respectfully submitted,

                                        */s/ Joshua H. Eggnatz*
                                        Joshua H. Eggnatz, Esq. (FBN 0067926)
E-mail: JEggnatz@JusticeEarned.com
Michael J. Pascucci, Esq. (FBN 0083397)
E-mail: MPascucci@JusticeEarned.com
**EGGNATZ | PASCUCCI**
7450 Griffin Road. Suite 230
Davie, FL 33314
Telephone: 954-889-3359
Facsimile: 954-889-5913

Seth M. Lehrman (FBN 132896)
E-mail: seth@epllc.com
**EDWARDS POTTINGER LLC.**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone: 954-524-2820
Facsimile: 954-524-2822

*Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 3, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

                                        */s/ Joshua H. Eggnatz*
                                        Joshua H. Eggnatz

## SERVICE LIST

Holly M. Hamilton, Esq.
Fla. Bar No.: 113307
HXHamilton@MDWCG.com,
DMVugrinovich@MDWCG.com and
SLThompson@MDWCG.com
**MARSHALL, DENNEHEY**
**WARNER, COLEMAN & GOGGIN**
2400 East Commercial Blvd., Suite 1100
Fort Lauderdale, FL 33308
Telephone: 954-847-4920

Facsimile: 954-627-6640

Danielle M. Vugrinovich, Esquire
(Admitted Pro Hac Vice)
DMVugrinovich@MDWCG.com
**MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN**
Union Trust Building, Suite 700
501 Grant Street
Pittsburgh, PA 15219
Telephone: 412-803-1140
Facsimile: 412-803-1188

*Attorneys for Defendant*